UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 03 CV 12307 RGS

JOSEPH CHRISTOFORO
        Plaintiff

VS.

JULIO LUPO, FRANK G. COUSINS, JR.,
INDIVIDUALLY AND IN HIS CAPACITY
AS ESSEX COUNTY SHERIFF, and
CERTAIN UNKNOWN INDIVIDUALS
        Defendants

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
JULIO LUPO FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

The Plaintiff, Joseph Christoforo, alleges that on December 23, 2002, while serving a sentence of incarceration at the Essex County House of Correction, he was struck by the Defendant, Julio Lupo, an Assistant Director of Food Services at the facility, in violation of his civil rights as guaranteed by the United States Constitution, as prohibited by 42 U.S.C. §1983 and §1988.

The gist of Count I of the Plaintiff's Amended Complaint appears to assert a claim of excessive force in violation of the Eighth Amendment and resolution of that claim should also settle any collateral claims or issues that may exist.[1]  Accordingly, this

---

[1] The Defendant asserts that as to each and every of the other alleged causes of action contained in or referred to by Count I of the Plaintiff's Complaint, there exists no genuine issues of material fact and that the Defendant is entitled to judgment as a matter of law.

analysis will focus on the Plaintiff's claims in light of the protections afforded under the Eighth Amendment to the United States Constitution.

## STATEMENT OF UNDISPUTED FACTS

On December 23, 2002, Plaintiff, Joseph Christoforo (hereinafter "Christoforo"), was an inmate kitchen worker at the Essex County House of Correction. On that day, he was assigned to the service line, preparing food trays along with several other inmates. (Christoforo Deposition, Vol. II, pgs 4-5; attached as Defendant's Ex. I)  The Defendant, Julio Lupo (hereinafter "Lupo") was the Assistant Director of Food Services on Christoforo's shift and was responsible for the orderly preparation of the meals. Lupo had supervisory authority over Christoforo and the other kitchen inmate workers. (Lupo Deposition, pg 18; attached as Defendant's Ex. II)

At one point, Lupo called out from across the kitchen for the line workers to be quiet. (Christoforo Deposition, Vol. II, pg 5; attached hereto as Ex. III)  Thereafter, Lupo observed Christoforo engaged in boisterous and disruptive conversation with other inmates on the service line. Lupo approached Christoforo, ordered him to stop talking, and walked away. Christoforo resumed with his disruptive talking and Lupo once again walked over, and for the third time asked Christoforo and the other inmates to be quiet and get back to work. (Christoforo Deposition, Vol. II, pgs 6-7; Lupo Deposition, pgs. 32-34; attached hereto as Ex. IV)  As he issued his directive, Lupo was standing behind Christoforo with his right hand resting on Christoforo's left shoulder. Lupo then remarked to Christoforo "and you stop egging them on" or words to that effect, and as he did, Lupo removed his right hand from Christoforo's left shoulder and brought it in

contact with Christoforo's left ear.[2] Lupo then walked away and the inmates, including Christoforo, returned to work without further incident. (Lupo Deposition, pgs 32-37, Christoforo Deposition, Vol. II, pgs 5-8, Christoforo interview, pg 10; attached hereto as Defendant's Ex. VIII)  Christoforo did not complain of any injury in his initial report of the incident to Food Services Director Kathy Lawrence, nor did Ms. Lawrence observe or note any visible signs of injury to Christoforo (Statement of Kathy Lawrence, Lawrence Deposition, pgs 20-25; attached hereto as Defendant's Ex. IX)  Christoforo later requested and was granted permission to visit the infirmary.  Christoforo presented at the infirmary with complaints of dizziness and ringing in his left ear.  He also complained of nausea and several unwitnessed episodes of vomiting.  A small lump was allegedly noted behind his left ear.  On December 24, 2003, Christoforo reported that he was feeling better and was cleared to return to population. (Medical Records of Essex County House of Correction Medical Facility; attached hereto as Defendant's Ex. X)

     Christoforo later sought medical treatment at the Lemuel Shattuck Hospital and New England Eye Center, Tufts University School of Medicine, complaining of migraine headaches, left side hearing impairment, left eye impairment and left side face spasms. Diagnostic studies, including a CT Scan and MRI were unremarkable.  Medical opinion ruled out any causal relationship between the incident of December 23, 2002, and Christoforo's left eye and left side face complaints.  (Lemuel Shattuck and Tufts University Hospital medical records; attached hereto as Defendant's Ex. XI)  Christoforo

---

[2] A disputed, though not material, question of fact exists as to the exact nature of the physical contact that occurred between Lupo and Christoforo.  Lupo has always maintained that he lightly flicked Christoforo's left earlobe with the back side of his open right hand. (Lupo Deposition, Vol. II, pgs 34-37); attached hereto as Defendant's Ex. V)  Christoforo initially reported that he was slapped by Lupo (Incident Report of Kathleen C. Lawrance, Director of Food Services: Deposition of Kathleen C. Lawrance, pgs. 4-6, 20-25; attached hereto as Defendant's Ex. VI)  Christoforo now alleges that he was punched by Lupo. (Christoforo Deposition at pg. 7; attached hereto as Defendant's Ex. VII)

3

did not seek any psychiatric treatment for any alleged emotional or psychological injuries. (Christoforo Deposition, Vol. II, pgs 112-113; attached hereto as Defendant's Ex. XII)

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties proof in an effort to determine whether trial is actually required. *McIntosh vs. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995)(citing *Wynn vs. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir. 1992). A motion for summary judgment will be granted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Hinchey vs. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir. 1998)(quoting Fed. R. Civ. P. 56(c). *Lehman vs. Prudential Ins. Co. of America*, 74 F.3d 323 (1st Cir. 1996).

Summary judgment shall be entered in favor of a moving party when the pleadings, affidavits and depositions establish there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Lehman vs. Prudential Ins. Co. of America,* 74 F.3d 323 (1st Cir. 1996); *Hope Furnace Associates, Inc. vs. F.D.I.C.*, 71 F.3d 39 (1st Cir. 1995). The Plaintiff cannot rely upon the allegations contained in his complaint to get beyond a motion for summary judgment. He must present evidence to counter that which the defendant presents and cannot rest upon the allegations in his pleadings. *Vargas vs. Royal Bank of Canada*, 604 F. Supp. 1036 (D.C. Puerto Rico 1985.)

**ARGUMENT**

"Whenever a prison official stands accused of using excessive physical force constituting 'the unnecessary and wanton infliction of pain' violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley vs. Albers*, 475 U.S. 312, 320-321"; *Hudson vs. McMillian, et al*, 503 U.S. 1.  The central question is whether the physical force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Whitley*, 475 U.S. at 321.

Under *Whitley*, in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment to the United States Constitution, the courts will look to several factors including: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of injury inflicted; 4) the extent of the threat to the safety of the staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and 4) any efforts made to temper the severity of a forceful response. *Whitley*, *supra* at 321.

"An inmate's constitutional protection against excessive force is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Hunt vs. Budd*, 895 F. Supp. 35, 38 (N.W.N.Y. 1995) (quoting *Johnson vs. Glick*, 481 F.2d 1028 (1973)). What constitutes such conduct varies according to the nature and circumstances of the alleged constitutional violation. *Whitley*, *supra* at 312, 320.  "The question whether the measures taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a <u>good faith effort to maintain or restore discipline</u> or <u>maliciously and sadistically for the very purpose of causing harm</u>."  *Id*. at 320-21. (quoting *Johnson vs. Glick*, *supra*.))  "Whether the prison disturbance is a riot or lesser

disturbance, correction officers must balance the need to 'maintain or restore discipline' through force against the risk of injury to inmates." *Hudson* at 996.

The Eighth Amendment prohibition against civil and unusual punishment necessarily excludes from recognition de minimus uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 112 S. Ct. at 1000 (quoting *Whitley*, 475 U.S. at 327). The absence of serious injury, though not singularly determinative, is nevertheless relevant. *Id*. at 1000. Accordingly, "not every punch or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's rights."

Applying *Whitley* and its progeny to the facts of the instant case, it is clear that on the date of the alleged incident, there existed a reasonably perceived need for the application of some degree of force.

Prior to the use of any physical force, Christoforo was engaging in unruly and disruptive behavior. Moreover, Christoforo's conduct was having an immediate and disruptive effect on several other inmates. (Defendant's Ex. VIII). Christoforo had been verbally warned two times before the application of any force to remain quiet and return to work. (Defendant's Ex. VIII) All reasonable efforts to avoid the use of physical reinforcement were frustrated by Christoforo's repeated refusal to obey Lupo's directives. The amount of physical force ultimately employed, whether a slap, punch, or mere flick of the hand (please see Footnote 1), amounted to a single instance of physical contact – hardly the type of conduct that might be viewed as "repugnant to the conscience of mankind." *Hudson*, *supra*. In point of fact, the degree of force used was clearly de minimus as evidenced by the de minimus nature of Christoforo's alleged injuries.

(Defendant's Exs. IX, X and XI)  Moreover, Lupo's de minimus use of physical force achieved its desired effect of restoring order and avoiding the escalation of disharmony among the inmates.

## CONCLUSION

The Defendant submits that in light of the undisputed facts and circumstances described above, no person could reasonably conclude that the Defendant, Julio Lupo, violated any rights of the Plaintiff, Joseph Christoforo, as guaranteed by the United States Constitution.

WHEREFORE, the Defendant, Julio Lupo, is entitled to judgment as a matter of law on Count I of the Plaintiff's Complaint.

Respectfully submitted,
DEFENDANT, JULIO LUPO

By his Attorney,

/s/"Jay Hodapp"
Jay Hodapp/BBO #551348
Joseph W. Monahan, III/BBO #351000
MONAHAN & PADELLARO
43 Thorndike Street
Cambridge, MA   02141
617-494-1188

Dated: June 20, 2005