UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 03 CV 12307 RGS

| | |
|---|---|
| JOSEPH CHRISTOFORO,  )<br>      Plaintiff.  )<br>  )<br>VS.  )<br>  )<br>JULIO LUPO,  )<br>FRANK G. COUSINS, JR.,  )<br>INDIVIDUALLY AND IN  )<br>HIS CAPACITY AS  )<br>ESSEX COUNTY SHERIFF, and  )<br>CERTAIN UNKNOWN  )<br>INDIVIDUALS,  )<br>      Defendants.  ) | PLAINTIFF'S OPPOSITION TO<br>DEFENDANT LUPO'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

Now comes the Plaintiff, Joseph Christoforo, and does hereby oppose the Defendant's, Julio Lupo, Motion for Summary Judgment for the reasons as follows.

**I. STATEMENT OF THE CASE**

The Plaintiff brings this action as a victim of a physical assault on or about December 23, 2002 by an employee of the Essex County Sheriff's Department, who was acting under the color of law, when the Plaintiff was incarcerated at the Essex County House of Correction in Middletown, Massachusetts.

Prior to the assault, the Plaintiff had notified certain Essex County Sheriff's Department officials that he apprehended an impending physical assault at the hands of the Defendant.

This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and claims violations of the Plaintiff's civil rights as guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Defendant Lupo now moves for summary judgment solely on the grounds that he is not in violation of the Eighth Amendment. This opposition will show that genuine issues of material fact exist as to his liability under the Eighth Amendment, therefore the Defendant is not entitled to judgment as a matter of law.

## II. STATEMENT OF FACTS

The Plaintiff, Joseph Christoforo, was an inmate at the Essex County House of Correction in Middletown, Massachusetts when he was assaulted on or about December 23, 2002. The day of the assault, Mr. Christoforo began a new work position because he had requested the day before to relinquish his position as head cook. Christoforo depo p. 8-10 (Exhibit A). Mr. Christoforo made this request because he could no longer tolerate the harassing and abusive behavior of Defendant Lupo, the former Assistant Director of Food Services. Id. at 8-9. Lupo constantly badgered Mr. Christoforo which, over a period of months, transpired into incessant physical and mental abusive behavior that caused Mr. Christoforo to fear working under the supervision of Lupo. Id. Upon his request, the only new positions offered were cleaning the toilets and the garbage barrels. Id. at 10. Without hesitation, Mr. Christoforo accepted this new position because it did not require him to work under Defendant Lupo's supervision. Id.

Mr. Christoforo's deposition reveals numerous situations that detail the unbearable working conditions created by Defendant Lupo. Lupo continually singled-out Mr. Christoforo

and made inappropriate sexual comments to him. For instance, Lupo would ask Mr. Christoforo, in a kitchen filled with twenty to twenty-five inmates and among four to five prison officials, whether Mr. Christoforo would have sex with Lupo and another woman upon Mr. Christoforo's release. Id. at 22, 32. Lupo would repeatedly order Mr. Christoforo to remove the mandatory food-handling gloves from Lupo's pocket while telling Mr. Christoforo that he enjoyed it when Mr. Christoforo touched him. Id. at 23-24. (Officer Joseph Curran corroborated this fact when he stated that he witnessed Defendant Lupo tell Mr. Christoforo to remove the food-handling gloves from his pocket. Curran depo p. 14 (Exhibit B). Lupo would also frequently rub against Mr. Christoforo while he was cooking, including rubbing his crotch into Mr. Christoforo's behind, and Lupo inquired as to whether Mr. Christoforo was a bisexual. Christoforo depo p. 28, 44, 46. Also, there was an instance when Lupo aggressively threw food at Mr. Christoforo while he was stocking the food. Id. at 15; see also Souther interview p. 3-4, 6 (Exhibit C).

Inmates David Souther, Ralph Sordillo, and Robert Smith have confirmed that on a daily basis, Defendant Lupo singled-out Mr. Christoforo from all of the other inmates in the kitchen. Souther interview p. 7; Sordillo interview p. 8 (Exhibit D); Smith interview p. 10-11 (Exhibit E). Sordillo stated that Lupo "picks on [Mr. Christoforo], makes him clean up his mess... treats him like shit, like he is dirt... makes his life miserable in the kitchen. Sordillo interview p. 8. Smith also stated that "Christoforo" was the only inmate's name that Lupo would scream out even though the kitchen was filled with other inmates. Smith interview p. 11.

After each of these unwarranted acts and in response to Mr. Christoforo's pleas that Lupo stop this behavior, Lupo would threaten to take away Mr. Christoforo's parole and stated that he would deny any claims made against him. Christoforo depo p. 17, 49-50; Souther interview p. 4.

Despite these threats, Mr. Christoforo repeatedly reported Lupo's inappropriate comments and behavior to prison officers, including Officer Arthur LeGault, but it was not until Lupo assaulted Mr. Christoforo that the County Sheriff's Office acted upon these complaints. Christoforo depo p. 15, 20-21; Sheriff Cousins' letter (Exhibit F).

The day of the assault, which was also the first day Mr. Christoforo began working at his new position, Mr. Christoforo began cleaning the garbage barrels and floors and he also worked in the food service line. Christoforo depo p. 57-58. At some point, Mr. Christoforo left his duties to attend a weekly computer class and upon returning, Lupo demanded that Mr. Christoforo "drop what [he] was doing and to get to the [service] line." Id. at 57-59.

Moments later, Defendant Lupo began to yell at those in close proximity to Mr. Christoforo, including Mr. Christoforo, to "keep your mouth[s] shut" when the inmates were discussing who would replace Mr. Christoforo as cook. Id. at 5-6. One inmate, Mr. Smith made comments that he wanted the position, but that he would not receive it based solely on racial reasons. Id. at 5. During this conversation, Lupo approached the area and without any provocation, called Mr. Smith the Italian racial slur, "melongena." Id. at 6, 60. Upon hearing this word, one of the inmates inquired as its meaning.[1] Defendant Lupo, angry that the men were talking, stepped behind Mr. Christoforo, put his hand on Mr. Christoforo's shoulder, and while swearing at him, assaulted Mr. Christoforo with a blow to his head causing severe injury. Id. at 6-7, 68-70, 73-74.

---

[1] It is unclear which inmate inquired as to the definition and which inmate provided its meaning. Mr. Christoforo states that he did not know the slang meaning of the word and that led him to inquire its definition. Christoforo depo p. 6, 60, 65-67. Mr. Sordillo, an inmate who sat next to Mr. Christoforo in the serving line, stated that he personally provided the word's connotation after it was inquired by Mr. Smith. Sordillo interview p. 4-5. Mr. Smith stated that Mr. Christoforo provided him with the definition. See Smith interview p. 4-5.

Subsequent to this assault and after an investigation of the incident by the Sheriff's Department, the Internal Affairs Investigators concluded that there was evidence that Defendant Lupo's conduct was "clearly unbecoming" and "in violation of Department rules and regulations governing personal conduct in the workplace and while interacting with inmates under your supervision." Sheriff Cousins' letter p.1, #1.  Because of the assault, Lupo was suspended without pay and ordered to successfully complete Anger Management Assessment and Counseling sessions.  Id. at p. 1-2, #4-5.

Within six months of the assault on Mr. Christoforo, Defendant Lupo quit his job in lieu of proceeding with a disciplinary termination hearing regarding a claim that Lupo attempted to poison Officer LeGault, who as stated above, was an officer who Mr. Christoforo reported Lupo's conduct.  Settlement Agreement (Exhibit G); Lupo depo p. 65 (Exhibit H).

## III. STANDARD OF REVIEW

In moving for summary judgment, the moving party has the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue raised by the pleadings and, when viewing the facts most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  See F.R.C.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A "genuine" issue is one that reasonably could be resolved in favor of the nonmoving party, and a "material" fact is one that affects the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Id. at 249.

**IV. ARGUMENT**

> DEFENDANT ACTED IN BAD FAITH AND FOR NO LEGITIMATE PURPOSE WHEN DEFENDANT ASSAULTED PLAINTIFF WHO DID NOT PROVOKE DEFENDANT.

In cases where an inmate challenges a prison official's use of force, summary judgment in favor of the moving party should not be granted if "it appears that the evidence, viewed in the light most favorable to the plaintiff, goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." See Whitley v. Albers, 475 U.S. 312, 322; see also Sampley v. Ruettgers, 704 F.2d 491, 495 (10th Cir. 1983) (holding that wantonness exists when a prison guard intends to harm an inmate); see also Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987). While prison administrators should be accorded deference in executing prison policies and practices, that deference will "not insulate from review actions taken in bad faith and for no legitimate purpose." Whitley, 475 U.S. at 321-322.

It would be injustice to grant Defendant Lupo's motion for summary judgment because the evidence proves that Lupo's assault on Mr. Christoforo was unjustified and that excessive force was used because there was simply no need to "restor[e] order." See Defendant Lupo's motion p. 7 (Exhibit I).

Defendant Lupo would not permit Mr. Christoforo to work in his new position and instead, ordered him to get into the serving line where Mr. Christoforo would then be under Lupo's command. Christoforo's depo p. 58-59. Within moments of complying with Lupo's order, Lupo began yelling at the inmates around Mr. Christoforo for talking loudly when the inmates were simply discussing who would replace Mr. Christoforo as head cook. Id. at 5-6. As

the inmates continued their discussion, Lupo called the inmate inquiring about this replacement a racial slur. Id. at 6. Because the slur was in Italian, those unfamiliar with the word naturally inquired as to its meaning. This provoked Lupo, which is ironic because he created the reason for this discussion.

Lupo's actions go "beyond a mere dispute of reasonableness of the force used and support a inference of wantonness in the infliction of pain." See Whitley, 475 U.S. at 322; see also Sampley, 704 F.2d at 495. After conducting interviews and reviewing the medical report, Timothy P. McGuire, Security Director of the Sheriff's Department [who at the time of the assault in 2002 was the Assistant Security Director], concluded that Defendant Lupo "exceeded what would be considered a reasonable use of force under the circumstances" and that, as in this incident, "any physical contact with an inmate unprovoked would be inappropriate." McGuire depo p. 24-25 (Exhibit J).

In his motion, Defendant Lupo claims "physical reinforcement" was necessary because of Mr. Christoforo's "unruly and disruptive behavior." Defendant's motion p. 6. The investigation following the assault proved that this was not the case. Security Director McGuire noted the consistency of the inmates' statements that confirmed Lupo's unprovoked attack, the Sheriff's Department suspended Lupo without pay as a result of this assault, and the Sheriff's Department ordered that Lupo successfully complete anger management and counseling sessions. Sheriff Cousins' letter p. 1-2, #4-5.

Under Whitley, the courts may consider several factors in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: (1) the need for the application of force, (2) the relationship between the need and the amount of

force that was used, (3) the extent of the injury inflicted, (4) the extent of the threat to the safety of the staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. See Brooks v. Kyler, 204 F.3d 102, 106 (3rd Cir. 2000) (citing Whitley, 475 U.S. at 321).

As to the first two factors, courts have held that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973).) Defendant Lupo fails to satisfy these first two factors because Security Director McGuire, and the Sheriff's Department concurred, that Lupo exceeded his use of force and that there was no need for any application of force, particularly when unprovoked by Mr. Christoforo. McGuire depo p. 24-25; Sheriff Cousins' letter p. 1, #1. The incessant abusive behavior Defendant Lupo forced Mr. Christoforo to endure whether by badgering, making either sexual remarks or gestures, or threatening Mr. Christoforo prove that this assault was another unjustified tactic by Lupo. Furthermore, it is unlikely that Lupo would have been suspended without pay for his "good-faith effort" in restoring or maintaining order. See Whitley, 475 U.S. at 320.

As to the third factor, the Supreme Court held in Hudson v. McMilliam, that the prisoner does not need to suffer serious injury in order to prove he was subjected to "cruel and unusual punishment." Hudson v. McMillaim, 503 U.S. 1, 4 (1992). The Eighth Amendment excludes *de minimis* uses of physical force as long as it is not of a sort "repugnant to the conscience of mankind." Whitley, 474 U.S. at 327. The medical reports from the prison infirmary confirmed

8

Mr. Christoforo suffered extensive and serious injury immediately after the blow, which both Security Director McGuire and the Sheriff's Department relied on when evaluating the incident. Medical Services Reports (Exhibit K); McGuire depo p. 18-19; Sheriff Cousins' letter p. 1, #1. In the alternative, if this court finds the blow to be *de minimis*, it was a blow of a sort "repugnant to the conscience of mankind" because when looking at the totality of the circumstances of Lupo's abusive nature toward Mr. Christoforo, this assault added to the abusive behavior Defendant Lupo forced Mr. Christoforo to endure. See Whitley, 474 U.S. at 327

As to the fourth factor, there was no threat to the safety of either the staff or inmates as evident by Sheriff Cousin's letter to Lupo stating that the "alleged actions are considered to be a serious dereliction of duty that brings into question his ability to function effectively as a senior officer and leader in this Department." See Sheriff's letter p. 1, #3.

And the fifth factor does not even apply because no forceful response by Mr. Christoforo ever existed. Security Director McGuire noted that "any physical contact with an inmate unprovoked would be inappropriate." McGuire depo p. 25. Mr. Smith also stated his astonishment that Lupo assaulted Mr. Christoforo when he explained, "[Lupo's] calling me this name... I thought he was gonna hit me." See Smith interview p. 6-7.

Defendant Lupo cannot show that any of the Whitley factors can be adequately applied to his unprovoked assault and this Court should not protect prison guards who take actions in bad faith and for no legitimate purpose, as in this case. See Whitely, 475 U.S. at 322.

V. **CONCLUSION**.

Therefore, viewing the evidence in the light most favorable to Mr. Christoforo, there is a question of fact whether Defendant Lupo's unprovoked assault on Mr. Christoforo was justified under the Eighth Amendment and therefore the Defendant is not entitled to judgment as a matter of law.

          Respectfully Submitted,
          JOSEPH CHRISTOFORO
          By His Attorney:

          _/s/ Edward J. McCormick_
          Edward J. McCormick, III
          Gilmore, Rees, Carlson & Cataldo, P.C.
          1000 Franklin Village Drive
          Franklin, MA 02038
          (508) 520-2200
          BBO No. 329780

286452.2