UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 03 CV 12307 RGS

| | | |
|---|---|---|
| JOSEPH CHRISTOFORO, | ) | |
| Plaintiff. | ) | |
| | ) | |
| vs. | ) | |
| | ) | PLAINTIFF'S OPPOSITION TO |
| JULIO LUPO, | ) | DEFENDANT COUSINS' |
| FRANK G. COUSINS, JR., | ) | MOTION FOR SUMMARY |
| INDIVIDUALLY AND IN | ) | JUDGMENT |
| HIS CAPACITY AS | ) | |
| ESSEX COUNTY SHERIFF, and | ) | |
| CERTAIN UNKNOWN | ) | |
| INDIVIDUALS, | ) | |
| Defendants. | ) | |

Now comes the Plaintiff, Joseph Christoforo, and does hereby oppose the Defendant's,

Frank Cousins, Jr., Motion for Summary Judgment for the reasons as follows.


I. <u>STATEMENT OF THE CASE</u>


The Plaintiff brings this action as a victim of a physical assault on or about December 23,

2002 by an employee of the Essex County Sheriff's Department, who was acting under the color

of law, when the Plaintiff was incarcerated at the Essex County House of Correction in

Middletown, Massachusetts.

Prior to the assault, the Plaintiff had notified certain Essex County Sheriff's Department

officials that he apprehended an impending physical assault at the hands of one of its employees.

This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and claims violations of the Plaintiff's civil rights as guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Defendant Cousins now moves for summary judgment on the grounds that he is not in violation of federal civil rights pursuant to 42 U.S.C. §§ 1983 and 1988. This opposition will show that genuine issues of material fact exist as to his liability and therefore, the Defendant is not entitled to judgment as a matter of law.

## II. STATEMENT OF FACTS

The Plaintiff, Joseph Christoforo, was an inmate at the Essex County House of Correction in Middletown, Massachusetts when he was assaulted on or about December 23, 2002. The day of the assault, Mr. Christoforo began a new work position because he had requested the day before to relinquish his position as head cook. Christoforo depo p. 8-10 (Exhibit A). Mr. Christoforo made this request to Paul Wolzack of the Essex County Sheriff's Department because he could no longer tolerate the harassing and abusive behavior of Defendant Lupo, the former Assistant Director of Food Services. Id. at 8-9. Mr. Christoforo informed Mr. Wolzack that Lupo constantly badgered him which, over a period of months, transpired into incessant physical and mental abusive behavior that caused Mr. Christoforo to fear working under the supervision of Lupo. Id.

As the Assistant Director of Food Services, Defendant Lupo supervised the inmates working in the kitchen. See Lawrence depo at 6 (Exhibit B). Despite this supervisory position,

2

when Defendant Lupo began working for the Essex County House of Correction in 1999 he did not receive any training; he was not required to attend any courses or training seminars about his job; nor was he given any directions on how to perform his job. Lupo depo p. 27-28 (Exhibit C). Prior to his employment for Essex County, Lupo worked as a cook and had no prior experience working in a correction house. Lupo depo p. 27.

Mr. Christoforo's deposition reveals numerous situations that detail the unbearable working conditions created by Defendant Lupo consisting of constant inappropriate sexual comments made to Mr. Christoforo, the repeated singling-out of Mr. Christoforo among other inmates, and Lupo's aggressive behavior toward Mr. Chrisotoforo as Mr. Christoforo performed his work duties. Id. at 15, 22-4, 28, 32, 44, 46; Souther interview p. 3-4, 6 (Exhibit D).

It was widely known at the Essex County House of Correction that on a daily basis, Defendant Lupo singled-out Mr. Christoforo from all of the other inmates. Souther interview p. 7; Sordillo interview p. 8 (Exhibit E); Smith interview p. 10-11 (Exhibit F). Sordillo stated that Lupo "picks on [Mr. Christoforo], makes him clean up his mess... treats him like shit, like he is dirt... makes his life miserable in the kitchen. Sordillo interview p. 8. Smith also stated that "Christoforo" was the only inmate's name that Lupo would call out over the P.A. system. Smith interview p. 11.

After each incident of Defendant Lupo's unwarranted acts and in response to Mr. Christoforo's pleas that Lupo stop this behavior, Lupo would threaten to take away Mr. Christoforo's parole and stated that he would deny any claims made against him. Christoforo depo p. 17, 49-50; Souther interview p. 4.

Despite these threats, Mr. Christoforo repeatedly reported Lupo's inappropriate comments and behavior to prison officers, including Officer Arthur LeGault and Paul Wolzack, but it was not until Lupo assaulted Mr. Christoforo on or about December 23, 2002, that the Essex County Sheriff's Office acted upon these complaints and noted this *"ongoing problem"* of Defendant Lupo. Id. at 8-10, 15, 20-21; see also Cousins' letter dated Dec. 30, 2001[1] (Exhibit G); see also Cousins' letter dated Jan. 14, 2003 (Exhibit H).

## III. STANDARD OF REVIEW

In moving for summary judgment, the moving party has the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue raised by the pleadings and, when viewing the facts most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See F.R.C.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317. A "genuine" issue is one that reasonably could be resolved in favor of the nonmoving party, and a "material" fact is one that affects the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Id at 249.

---

[1]The letter is dated December 30, 2001, but the Plaintiff's counsel believes this is an error because the letter pertains to Defendant Lupo's suspension effective December 24, 2002 immediately following the assault.

## IV. ARGUMENT

### DEFENDANT SHERIFF ACTED WITH RECKLESS OR CALLOUS INDIFFERENCE TO REPORTED THREATS AGAINST PLAINTIFF THAT DIRECTLY AND PROXIMATELY CAUSED PLAINTIFF'S INJURIES.

Defendant Cousins argues that this case should be dismissed because this court has no

jurisdiction over him pursuant to M.G.L. c. 34B. Defendant Cousins Memo p. 3. However,

pursuant to M.G.L. c. 34B, sheriffs shall continue to operate under M.G.L. c. 37 which permit

claims and judgments to be rendered against sheriffs in their official and/or private capacities.

M.G.L. c. 37.

Supervisor liability may not be predicated upon a theory of *respondeat superior*, but a

supervisor may be liable on the basis of his own acts or omissions. Gutierrez-Rodriguez v.

Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Bowen v. City of Manchester, 966 F.2d 13, 20 (1st

Cir. 1992). To impose supervisory liability, the supervisor's conduct or inaction must amount to

reckless or callous indifference to the constitutional rights of others and that an affirmative link

existed between the constitutional violation of his acts or omissions. Guiterrez-Rodriguez, 882

F.2d at 562; Miller v. Kennebec County, 219 F.3d 8, 13 (1st Cir. 2000).

Genuine issues of material fact exist as to whether Defendant Cousins, the Sheriff of

Essex County and acting within the scope of his duties as Sheriff and under color of law, had

personal knowledge that Mr. Christoforo faced a substantial risk of serious harm at the hands of

Defendant Lupo and failed to take reasonable measures to abate that risk. It was common

knowledge throughout the correction house that Defendant Lupo's incessantly abused Mr.

Christoforo. See Souther interview p. 7; see also Sordillo interview p. 8; see also Smith

interview p. 10-11. Mr. Christoforo repeatedly informed Essex County officials as to Lupo's

5

mental and physical abuse against him. Christoforo depo p. 8-9, 15, 20-21. And most

importantly, in a letter to Lupo after the assault, Defendant Cousins acknowledged that the

"result of this action is an *ongoing problem*." Cousins' letter dated Dec. 30, 2001.

Defendant Cousins violated Mr. Christoforo's constitutional rights by either acting

recklessly or with callous indifference in his failure to take reasonable measures to abate the

known risk that Mr. Christoforo would be assaulted and battered by Lupo. See Guiterrez-

Rodriguez, 882 F.2d at 562; see also Miller, 219 F.3d at 13. This indifference was the

affirmative link to Lupo's violation of Mr. Christoforo's constitutional rights and was the direct

and proximate cause of Mr. Christoforo's injuries. See id.

In the alternative, Defendant Cousins is liable under § 1983 for failing to train Defendant

Lupo before he began supervising inmates at the Essex County Correction House. See City of

Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Failure to train liability is limited in

application to cases "where the failure to train amount to deliberate indifference to the

constitutional rights of persons with whom the [officers] come in contact." Id. The Court stated

that the issue becomes whether the training program is adequate in relation to the tasks the

particular officers must perform. Id. at 390.

As Assistant Director of Food Services, Defendant Lupo supervised the activities of

inmates working in the kitchen area, yet when he began working for Sheriff Cousins he did not

receive any training or instruction even though he had no prior experience working in a

correction house. See Lawrence depo p. 6; Lupo depo p. 27-28. Although Lupo did eventually

attend one training course, it occurred at least one to two years after Lupo began his employment

and therefore, it can be inferred that teaching a supervisor the proper procedures at that point may

6

be ineffective. Lupo depo p. 28. By failing to adequately train a supervisor of inmates, a genuine issue of fact exists as to whether Defendant Cousins acted deliberately indifferent to the constitutional rights of inmates with whom the officers came into contact. See City of Canton, 489 U.S. at 388.

The Defendant should not be allowed to avoid liability by simply contending that he did not know how bad a character Lupo was. The Sheriff was responsible for assigning Lupo to his position where Lupo was responsible for keeping order in the kitchen. Lupo depo p. 18; see Lawrence depo p. 6. The physical assault by Lupo on Mr. Christoforo was not an isolated incident that was unforeseeable by Sheriff Cousins. Rather, Mr. Christoforo has established that the abuse and harassment by Lupo was ongoing and was a pattern of conduct. If this was unknown to Defendant Cousins, it only through his own "callous indifference." See Guiterrez-Rodriguez, 882 F.2d at 562; see also Miller, 219 F.3d at 13. Therefore, the motion for summary judgment should be denied.

## V. CONCLUSION.

For the all the reasons stated above, genuine issues of material fact exist as to Defendant Cousins' recklessness or callous indifference toward the reported threats and Cousins' acknowledgment regarding the *"ongoing problem"* of Defendant Lupo; therefore, Plaintiff Mr. Christoforo moves this honorable court to deny Defendant Cousins' Motion for Summary Judgment.

Respectfully Submitted,
JOSEPH CHRISTOFORO
By His Attorney:


__/s/ Edward J. McCormick__
Edward J. McCormick, III
Gilmore, Rees, Carlson & Cataldo, P.C.
1000 Franklin Village Drive
Franklin, MA 02038
(508) 520-2200
BBO No. 329780

287980.2

8