UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 03 CV 12307 RGS

| | | |
|---|---|---|
| JOSEPH CHRISTOFORO | ) | |
|     Plaintiff | ) | |
| | ) | <u>Memorandum of Law in Support of</u> |
| VS. | ) | <u>Motion for Summary Judgment</u> |
| | ) | |
| JULIO LUPO, | ) | |
|     Defendant | ) | |

<u>Introduction</u>

The defendant has admitted the following in his pleadings and during discovery: 1) that he was employed by the Essex County Sheriff's Department at the time of the events giving rise to the instant cause of action; 2) that he struck the plaintiff on December 23, 2003; and 3) as a result of that assault on December 23, 2003, the plaintiff suffered physical injuries, mental anguish, emotional distress, and permanent injuries.

There exists no genuine issue of material fact and the plaintiff is entitled to judgment as a matter of law.

<u>Procedural Background</u>

On November 19, 2003, Mr. Christoforo filed his Complaint against the defendant, Julio Lupo. In that Complaint, Mr. Christoforo alleged counts pursuant to 42 U.S.C. §§ 1983 and 1988 against both Mr. Lupo and certain unknown individuals. (See Exhibit A, Complaint). An Amended Complaint was subsequently filed on March 1, 2004, which added Frank G. Cousins, Jr., as a defendant, also alleging counts pursuant to 42 U.S.C. §§ 1983 and 1988. (See Exhibit B, Amended Complaint). Mr. Lupo filed his Answer on June 15, 2004. (See Exhibit C, Defendant, Julio Lupo's, Answer to Plaintiff's First Amended Complaint and Demand for Jury Trial).

Defendants Cousins and Lupo filed motions for summary judgment on June 17, 2005 and June 20, 2005, respectively.[1] Defendant Lupo argued in his motion that the force he used against Mr. Christoforo was justified. In the alternative, Defendant Lupo argued that any injury to Christoforo was *de minimus* and therefore not actionable under the Eighth Amendment.

Defendant Lupo's motion was denied in its entirety by the by this Court on November 14, 2005.

Statement of Undisputed Material Facts

1. Mr. Christoforo was an inmate at the Essex County House of Correction in Middleton, Massachusetts on December 23, 2002. (Exhibit A, paragraph 1, Exhibit B, paragraph 1).

2. Mr. Lupo was employed as the Assistant Director of Food Services by the Essex County Sheriff's Department at the House of Correction, on December 23, 2002. (Exhibit D, page 12).

3. Mr. Christoforo was assaulted by Mr. Lupo on December 23, 2002. (Exhibit B, paragraph 8).

4. Mr. Lupo has admitted assaulting Mr. Christoforo on December 23, 2002. (Exhibit D, pages 32, 48; Exhibit E, pages 5, 15, 16, 17, 19, 27; Exhibit F, Defendant's Answer to Plaintiff's Interrogatory No. 10).

5. Mr. Christoforo suffered permanent physical and emotional injuries as a result of the assault on December 23, 2002. (Exhibit B, paragraph 12; Exhibit C, paragraph 12).

6. Mr. Lupo has admitted that Mr. Christoforo suffered permanent physical and emotional injuries as a result of the assault on December 23, 2002. (Exhibit B,

---

[1] Defendant Cousins' motion for summary judgment was granted on November 14, 2005.

2

paragraph 12; Exhibit C, paragraph 12).

7. Mr. Lupo's motion for summary judgment, affirmatively arguing that the force he used against Mr. Christoforo was warranted under the circumstances, or, in the alternative, that the damage caused to Mr. Christoforo was so *de minimus* as to bar recovery under the Eighth Amendment, was denied in full by this Court on November 14, 2005.

8. The Sheriff's Department conducted an investigation into the assault and concluded that there was evidence that Mr. Lupo's conduct was "clearly unbecoming" and "in violation of Department rules and regulations governing personal conduct in the workplace while interacting with inmates under [his] supervision." (Exhibit I, page 1, #1).

9. Assistant Security Director Timothy P. McGuire also conducted an investigation into the assault, including interviews and a review of the medical report; Director McGuire concluded that Mr. Lupo "exceeded what would be considered a reasonable use of force under the circumstances" and that, as in this incident, "any physical contact with an inmate unprovoked would be inappropriate." (Exhibit H, pages 24-25).

10. The Sheriff's Department suspended Mr. Lupo without pay as a result of the assault on Mr. Christoforo and ordered Mr. Lupo to successfully complete anger management and counseling sessions. (Exhibit I, pages 1-2, #4-5).

11. Mr. Christoforo's sustained the following injuries as a result of the assault: hearing loss, eyelid drooping, uncontrolled blinking, ringing ear, vision loss, walking difficulty, and permanent injuries. (Exhibit B, paragraph 11).

Summary Judgment Standard

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8 (1st Cir. 2007). A "genuine" issue is one that reasonably could be resolved in favor of the nonmoving party, and a "material" fact is one that affects the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).

Once the moving party has met its burden, the onus is on the nonmoving party to present facts that show a genuine issue for trial. Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). See also Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993); *cert. denied*, 511 U.S. 1018 (1994).

The party opposing summary judgment, however, "may not rest on mere allegations or denials of his pleading…" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), *cert. denied*, 516 U.S. 1113 (1986). Rather, to defeat a motion for summary judgment brought against it, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., *supra*, (citing Fed. R. Civ. P. 56(e)).

Lastly, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

Id. at 249.

Argument   This Court Should Grant Mr. Christoforo's Motion for Summary Judgment Because Mr. Lupo was Acting Under Color of Law at the Time of the Events in Question, Mr. Lupo Has Admitted That He Struck Mr. Christoforo, and Mr. Lupo Has Admitted That Mr. Christoforo Suffered Permanent Injuries as a Result of the Assault

As Mr. Lupo was acting under color of law when he struck Mr. Christoforo, Mr. Lupo has admitted under oath that he did in fact strike Mr. Christoforo, and Mr. Lupo has admitted that Mr. Christoforo suffered permanent injuries as a result of the assault, no genuine issue of material fact exists, and this Court should grant Mr. Christoforo's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).

The two elements of an action brought under 42 U.S.C. § 1983 are: 1) that the conduct complained of was committed under state law; and 2) that the conduct worked a denial of rights secured by the Constitution or laws of the United States.  Chongris v. Board of Appeals, 811 F.2s 36, 40 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987).

Mr. Lupo's conduct was committed under color of law and that same conduct worked a denial of Mr. Christoforo's rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to Constitution of the United States, including his rights guaranteed by the Eighth Amendment's Cruel and Unusual Punishment Clause.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."); Whitley v. Albers, 475 U.S 312 (1986) (holding "unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment," *quoting*, Ingraham v. Wright, 430 U.S. 651, 670 (1977)).

As discussed, *infra*, Mr. Lupo has admitted that he was employed by the Essex County

House of Correction at the time of the events in question, he has admitted striking Mr. Christoforo, and he has admitted that Mr. Christoforo suffered permanent physical injuries, as well as emotional distress and mental anguish, as a result of that assault.

There remains no genuine issue as to material fact in the instant matter and Mr. Christoforo is entitled to judgment as a matter of law.

    A.    <u>Mr. Lupo Was Acting Under Color of Law When He Struck Mr. Christoforo on December 23, 2002</u>.

Mr. Lupo has admitted that he was employed as a Corrections Officer at the Essex County House of Correction in Middleton by the Essex County Sheriff's Department at the time of the incidents giving rise to the instant cause of action, (See Exhibit B, paragraph 2; Exhibit C, paragraph 2). Additionally, at the exact time he struck Mr. Christoforo, Mr. Lupo was working as the Assistant Food Director for the Essex County House of Correction kitchen (See Exhibit D, page 12).

There is no issue as to whether Mr. Lupo was acting under color of law when he struck Mr. Christoforo.

    B.    <u>Mr. Lupo Has Admitted that he Struck Mr. Christoforo on December 23, 2002</u>.

There is no genuine issue as to whether Mr. Lupo struck Mr. Christoforo on December 23, 2002, as Mr. Lupo has repeatedly admitted the same.

    1.    <u>Mr. Lupo's Deposition</u>

At his deposition, taken on May 16, 2005, Mr. Lupo testified as follows:

"Q:     Did you ever strike an inmate?

"A:     Yes.

"Q:     When was the first time you struck an inmate at the Essex County House of Correction?

6

"A:   December 23d, Joseph Christoforo."

(Exhibit D, Deposition of Julio Lupo, page 32).

"Q:   Why did you want to go to the infirmary?

"A:   See what was Christoforo's problem.

"Q:   Did you go to the infirmay?

…

"A:   Yes.

"Q:   And this was on December 23, 2002?

"A:   On or about that day?

"Q:   Is it the same day you struck Mr. Christoforo?

"A:   Yes, the same day I struck Joe Christoforo.

(Exhibit D, page 48).

      2.    <u>Mr. Lupo's Statement to Internal Affairs at the Essex County House of Correction</u>

Indeed, over two years before his deposition, Mr. Lupo repeatedly stated to an internal affairs investigator at the Essex County House of Correction that he had struck Mr. Christoforo:

"A:   … And I went back and tapped him on his ear, you know, just like that –

"Q:   To – who did you tap on the ear?

"A:   I tapped Joe Christoforo on his ear with my hand and told him to be quiet and we continued to work…"

(Exhibit E, Interview of Julio Lugo, page 5).

"Q:   … So you admit that you, what, tapped him on the head –

"A:   Yes.

"Q:   -- with a fist or with a backhand –

7

    "A:    No, with an open hand."

(Exhibit E, page 15)

    "Q:    … And they said that he did have a bruise on his ear and so forth and there's a medical report on it, said that he was – it appeared that he had been struck or the injuries were consistent with some sort of trauma to the side of his head. Okay? How hard would you say you hit him?

    "A:    Not hard at all, actually. I would say, you know, it was more like – just a tap with my hand."

(Exhibit E, page 16)

    "A:    I came up on the side of him –

    "Q:    And what hand did you use?

    "A:    My right hand.

    "Q:    Your right hand. And you hit him a backhand or like – on me, how did you hit him?

    "A:    Just like if I went up, I was like this –

    "Q:    Yeah.

    "A:    – and I went like that.

    "Q:    Just like this? You were standing like side to side?

    "A:    Side and side and I went just like that.

    "Q:    Okay. All right.

    "A:    You know, swing my arm and smack him in the head.

    "Q:    Right. Okay."

(Exhibit E, page 17)

    "Q:    So basically that's it. You do admit, sort of, tapping him on the side of the head –

    "A:    Yeah."

(Exhibit E, page 19)

8

> "Q: …What do you make of this? This – these allegations that he's saying, how do you explain that?
>
> "A: The allegations of me hitting him, yes –
>
> "Q: Okay.
>
> "A: – I did."

(Exhibit E, page 27).

### 3. Mr. Lupo's Answers to Interrogatories

Further, Mr. Lupo also stated in his sworn Answers to Interrogatories that on December 23, 2002, he "lightly flicked [Mr. Christoforo's] left ear." (Exhibit F, Defendant's Answer to Plaintiff's Interrogatory No. 10).

### 4. Mr. Lupo's Denied Motion for Summary Judgment

Indeed, Mr. Lupo appears never to have denied striking Mr. Christoforo. Quite the opposite, in addition to the above-referenced deposition testimony, internal affairs interview, and sworn answers to interrogatories, Mr. Lupo affirmatively argued in his previously-denied motion for summary judgment that the force he did use against Mr. Christoforo was warranted under the circumstances, or, in the alternative, that the damage caused to Mr. Christoforo was so *de minimus* as to bar recovery under the Eighth Amendment. No where has Mr. Lupo claimed he did not in fact strike Mr. Christoforo. This question of fact has been consistently and definitively answered by Mr. Lupo; there is no dispute as to whether Mr. Lupo struck Mr. Christoforo on December 23, 2002.

### C. Mr. Lupo Has Admitted that Mr. Christoforo Suffered Permanent Injuries as a Result of the Assault on December 23, 2002.

As Mr. Lupo has admitted in his pleadings that Mr. Christoforo suffered permanent injuries as a result of the assault of December 23, 2002, Mr. Christoforo is entitled to judgment

9

as a matter of law on his claims against Mr. Lupo.

More specifically, paragraph twelve of Mr. Christoforo's Amended Complaint reads as follows:

> "12.   That as a result of the above-described assault Mr. Christoforo sustained physical injuries, mental anguish, emotional distress, and permanent injuries."

(See Exhibit B, paragraph 12).

In his Answer to Mr. Christoforo's Amended Complaint, Mr. Lupo admitted the allegations of paragraph:

> "12.   The Defendant **admits** the allegations of this paragraph" (emphasis original).

(See Exhibit C, paragraph 12).

Thus, the defendant has admitted that Mr. Christoforo suffered permanent physical injuries as a result of the assault on December 23, 2002. Again, as discussed, *supra*, Mr. Lupo has repeatedly admitted assaulting Mr. Christoforo when he struck him that day; Mr. Christoforo is entitled to judgment as a matter of law.

>   D.   No Justification Existed for Mr. Lupo's Actions and he is Liable to Mr. Christoforo Pursuant to 42 U.S.C. § 1983.

At the time Mr. Lupo struck Mr. Christoforo, there was no reason, excuse, or justification for doing so. "While prison officials should be accorded deference in executing prison policies and practices, that deference will "not insulate from review actions taken in bad faith and for no legitimate purpose." Whitley v. Albers, *supra*, at 321-322.

The events leading up to the assault on Mr. Christoforo have previously been set forth in the plaintiff's Opposition to Mr. Lupo's motion for summary judgment, attached hereto as Exhibit K. In sum, however, the reason Mr. Lupo assaulted Mr. Christoforo was not to restore order or control a potentially explosive situation, but because Mr. Lupo was angry that Mr.

Christoforo had secured a transfer out Mr. Lupo's supervision. (See Exhibit K, pages 2-5). Indeed, Mr. Christoforo's new position was to start on December 23, 2002; however Mr. Lupo would not permit him to start his new job, instead ordering Mr. Christoforo to work on the serving line and under his control. (Exhibit G, pages 58-59).

Further, in Mr. Lupo's deposition, he testified as to what exactly Mr. Christoforo was doing to purportedly justify the assault:

> "Q: Tell us about that incident. What happened that caused you to strike Mr. Christoforo on or about December 23, 2002?
>
> "A: They were doing the meals.
>
> "Q: When you say "they," who do you mean?
>
> "A: The inmates were setting up the trays for lunch feeding. Inmate Christoforo was causing a disturbance in the line to slow the production down.
>
> "Q: What was he doing?
>
> "A: Talking between all the inmates, causing problems.
>
> "Q: What problems was he causing?
>
> "A: Just work problems, work-related.
>
> "Q: Like what?
>
> "A: Like stopping the inmates from working up to par.
>
> "Q: Did he physically stop anyone from working up to par?
>
> "A: No.
>
> "Q: So he did this, in your opinion, simply by speaking?
>
> "A: Speaking.
>
> "Q: What was he doing?
>
> "A: Swearing.

> "Q: What was he saying other than swearing?
>
> "A: I don't recall.
>
> "Q: What specific words, if any, do you recall him saying?
>
> "A: That this place sucks; we don't have to do this work.
>
> "Q: Anything else?
>
> "A: That's all."

(See Exhibit D, pages 32-33).

Allegedly slowing down production of lunch, by verbal means alone, cannot reasonably be considered a potentially explosive situation.

Also, the Security Director of the Sheriff's Department, Timothy P. McGuire, who at the time of the assault in 2002 was the Assistant Security Director, conducted his own investigation into the events of December 23, 2002. He conducted interviews, reviewed the medical report, and concluded that Mr. Lupo "exceeded what would be considered a reasonable use of force under the circumstances" and that, as in this incident, "any physical contact with an inmate unprovoked would be inappropriate." (See Exhibit H, pages 24-25).

Director McGuire also noted the consistency of the inmates' statements that confirmed Mr. Lupo's unprovoked attack, the fact that the Sheriff's Department suspended Mr. Lupo without pay as a result of this assault, and the fact that the Sheriff's Department ordered Mr. Lupo successfully complete anger management and counseling sessions. (See Exhibit I, pages 1-2, #4-5).

The factors this Court may consider in determining whether a correctional officer has used excessive force against an inmate in violation of the Eighth Amendment are well-established: 1) the need for the application of force; 2) the relationship between the need and the

amount of force that was used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of the staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and 5) any efforts made to temper the severity of a forceful response. See Whitley v. Albers, *supra*, at 321.

Regarding the first two factors, Director McGuire's investigation concluded that Mr. Lupo exceeded the reasonable amount of force necessary under the circumstances. (Exhibit H, pages 24-25). The Sheriff's Department concurred with that conclusion. (Exhibit I, page 1, #1). It is also unlikely that Mr. Lupo would have been suspended without pay had his methods in restoring or maintaining order been in good faith. See Whitley v. Albers, *supra*, at 320.

The third factor, the extent of Mr. Christoforo's injuries, has been admitted by Mr. Lupo. More specifically, the defendant admitted that Mr. Christoforo suffered permanent physical and emotional injuries as a result of this attack has been admitted by Mr. Lupo. (See Exhibit B, paragraph 12; Exhibit C, paragraph 12).

As to the fourth factor, there was simply no threat to the safety of either the staff or other inmates. Such was evidenced by Sheriff Cousin's letter to Mr. Lupo stating that the "alleged actions are considered to be a serious dereliction of duty that brings into question his ability to function effectively as a senior officer and leader in this Department." (See Exhibit I, page 1, #3).

Regarding the fifth and final factor, such does not apply in this case because no forceful response by Mr. Christoforo ever existed. Director McGuire noted that "any physical contact with an inmate would be inappropriate." (Exhibit H, page 25).

Accordingly, Mr. Lupo's use of force was not justified in accordance with the Whitley factors and Mr. Christoforo is entitled to judgment as a matter of law.

Conclusion

Accordingly, as there is no genuine issue with regard to a material fact as to Mr. Lupo's liability in the instant matter, and the injuries sustained by Mr. Christoforo as a direct and proximate result thereof, the Court should grant Mr. Christoforo's motion for summary judgment and schedule an assessment of damages hearing at the earliest opportunity.

Respectfully Submitted,
The Plaintiff,
By His Attorney,

  /s/ Edward J. McCormick, III
Edward J. McCormick, III
McCormick & Maitland
Suite Six – Hayward Manor
195 Main Street
Franklin, MA  02038
(508) 520-0333

**CERTIFICATION OF CONFERENCE**

Pursuant to Local Rule 7.1(a)(2), I, Edward J. McCormick, III, do hereby certify that I conferred by telephone with Defendant's counsel, Jay Hodapp, on September 14, 2007, regarding this motion in a good faith attempt to resolve or narrow the issue.

                                                             */s/ Edward J. McCormick, III*
                                                             Edward J. McCormick, III


**CERTFICATE OF SERVICE**

I, Edward J. McCormick, III, do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 17, 2007.

                                                             */s/ Edward J. McCormick, III*
                                                             Edward J. McCormick, III